## SUPREME COURT.

### THE PEOPLE ex rel. BARNET agt. COLLEGE OF PHYSICIANS AND SURGEONS.

The motion to quash a writ of mandamus is in the nature of a demurrer, and, *pro hac vice*, admits the facts recited in the writ.

In doubtful cases the court will not determine on the motion whether the writ lies or not, but let the mandamus go, that the matter may come before them on the return.

*Quere*, whether a right of visitation is not vested in the Regents of the University over eleemosynary corporations, chartered by them, where no such power is *expressly* reserved or given by law. ·

*New York Special Term, August* 1852. This was a motion to quash an alternative mandamus.

The alternative mandamus alleges that, by virtue of the matriculation and payments, tickets and other acts therein mentioned; and of the charter, by-laws, rules, regulations and conditions, also therein mentioned, the relator became and was entitled to hold the franchise, position or office of student or member of the college, and candidate for the degree of doctor of medicine, and to enjoy all the rights and privileges and franchises therewith connected, or thereunto in any way belonging, and to attend the lectures and cliniques as such candidate or student, and to pursue the medical studies to their completion, and to receive from the college, if found duly qualified, pursuant to the said requisites and conditions, the degree of doctor of medicine.

EDMONDS, Justice.—The motion to quash the writ of mandamus is in the nature of a demurrer. and admits the truth of the foregoing allegations, as well as that which follows, namely, that the trustees of the college, without legal or sufficient cause, and in an *ex parte* and illegal manner, have removed him from the said position as student and candidate for a degree, and deprived him of the valuable franchise thereto pertaining.

So that it is conceded that the defendants have in an arbitrary and illegal manner deprived the relator of a right which he had acquired by his payment to them, and their receipt from him of the required fees, and by his full compliance with their rules and regulations.

The relator's rights, and the wrong done to them by the defendants, being thus clearly established in the record, the only question presented to me is, whether a remedy can be afforded by means of a writ of mandamus? Not whether he has any remedy, but whether it can be sought for and administered to him in this form.

On the part of the defendants, it is insisted that the college being an eleemosynary corporation, is subject only to the visitation of its trustees, and that any wrong committed by the college can be redressed only by those trustees; and that as no appeal from their action has been provided in the act of incorporation, there is none in fact, and their determination is final. And the language of Lord Holt, in the leading case of Phillips vs. Bury (*Skin.* 475), is quoted; "The next point is no more than this; whether the justice of the sentence (of the visitor) be examinable in any of the courts of common law? That is, first, whether the sufficiency of the sentence as to the cause be examinable in the common law courts; and secondly, whether the truth of that cause, suppose it to be good and sufficient to ground the sentence, if true, can be inquired into and examined. And I think the sufficiency of the sentence is never to be called in question, nor any inquiries to be made here into the reasons or causes of the deprivation. If the sentence be given by him, that is a visitor, created so by the founder or by law, you shall never inquire into the validity or ground of the sentence." And again, "If he (the visitor) hath jurisdiction and cognizance of the matter and person, and he giveth sentence, there is no appeal, if the founder hath not thought fit to direct one. That an appeal lieth to the common law courts is without precedent."

Such, undoubtedly, is the doctrine laid down one hundred and fifty years ago, and followed in numerous instances since.

There are, however, two considerations which cause me to doubt its controlling power over the case now before me.

One is, that it does not clearly appear that there are no visitors beyond the trustees. Upon the facts, as they appear now in the papers, I might well infer that there were none. Yet it may well be that some power of visitation has been reserved by the Regents of the University; some right reserved or retained in

that body to supervise and guard against an arbitrary and unjust exercise of power by the officers of the literary institutions established by them.   And if there is such power of visitation, it ought, clearly, to be applied to before resort be had to the common law courts.

It is, undoubtedly, true that in the absence of any express provision for visitation, the trustees themselves became visitors, but the fact of the absence of any such provision is not clearly made out, as it may be on a return of a mandamus, and until such return shall be made, I can have no certain assurance that I shall be determining the question involved, on a correct basis of fact.

The other consideration is this, that the courts have sometimes departed from the strict rule laid down by Lord Holt.   In Rex vs. University of Cambridge (*Strange*, 558), the return, it was said, fully justified the sending a mandamus as it showed the power of the vice chancellor and congregation was only to deprive for a reasonable cause, and as it was not pretended there was any visitor or any other jurisdiction to examine into the reasonableness of the deprivation but that of the court.

In Rex vs. Dr. Askew (4 *Burr.* 2188), Lord Mansfield holds this language:

" There can be but little doubt that the college are *obliged,* in conformity to the trust and confidence placed in them by the crown and the public, to *admit all* that are *fit;* and to *reject all* that are *unfit.*   For under the reason and spirit, and true construction of this charter and this act of parliament, *no* person ought to be *suffered to practice* physic, *but such only* as have skill and ability, and have dilligently applied themselves to the study, and are well grounded in the knowledge of it; and on the other hand, *all* persons who *are so qualified,* and have bestowed their time and money and labor in the proper studies that tend to such qualifications, have a *right* to be admitted to exercise and practice their profession.   And the *public* have also a *right* to the assistance of such a person, who has by his labor and studies rendered himself capable of serving the public, by giving them proper advice and directions.

It is true that the judgment and discretion of *determining* upon this skill, ability, learning and sufficiency, to exercise and

practice this profession, is trusted to the College of Physicians; and this court will not take it from them, nor interrupt them in the *due and proper* exercise of it. But their conduct in the exercise of the trust thus committed to them, ought to be *fair, candid* and *unprejudiced;* not *arbitrary, capricious,* or *biassed;* much less warped by *resentment* or *personal dislike.*"

In *Dr. Goddard's case,* a mandamus was moved for to the College of Physicians, for restoring him to the fellowship of the college, and some doubt was made, whether a mandamus would lie for this, or for any fellowship in any of the colleges in the universities? But at last it was granted, and said that it should be considered on the return, whether it lies or not. And afterwards in *Trinity* term a return was made, whereby it appeared that a fellow (here) is not,. as fellow, member of a corporation, but is a kind of officer, as a manciple is to a college; and the return was adjudged good and no restitution " (*Levinz's Reports, vol.* 1, *p.* 19).

In doubtful questions, the court will not determine on motion, but let the mandamus go, that the matter may come before them on the return. In which case the parties have their remedy of reviewing the decision, which they may not have on the motion, and I can say, with the court in the case in *Strange,* " it is a consideration of great comfort to me, that if I do err, my judgment is not conclusive to the' party, but my mistake will be rectified, and so injustice not be done."

Therefore, it is, the question being one of doubt, and not intending to express any opinion upon it, that I deny the motion to quash the writ of alternative mandamus; it does not, however, follow that a peremptory writ should be awarded. It might be so, in the discretion of the court, and that discretion would be exercised, where the grounds on which the motion is made to quash the writ were frivolous. Here they are not so, but involve a grave question, which can properly be raised only on a return.

The true course, then, will be, to extend the time to make a return and grant a peremptory writ, unless the return to the alternative writ be made within twenty days after the service of the rule hereon, or within such further time as a judge at chambers may grant. Let a rule to that effect be entered.