## SUPREME COURT.

### The People, ex rel. Daniel A. Bullard agt. The Contracting Board.

*Service of notice* of motion for a mandamus, on a *majority* of the *contracting board* (a part of the canal board,) of the state, including the chairman, *held* a sufficient service.

When a party has no other adequate remedy, and his right is clear and undoubted, *mandamus* is not only the proper remedy, but is one of the most efficient proceedings known to the law for the enforcement of a right.

Where a contractor by his proposal, affidavits, certificates, bond, penalty, sureties, justification, and all the preliminary conditions required by the contracting board in their published notice to contractors for proposals to do certain work, has fully complied therewith, and is the lowest bidder, no combination with other bidders appearing, *the board are bound by statute to award him the contract.*

*Saratoga Special Term, December*, 1860.

Motion by relator, for mandamus against the contracting board of the state.

Lyman Tremain, *for relator.*
Henry Smith, *for contracting board.*

Potter, Justice. The preliminary objections taken to the hearing of the motion on the part of the contracting board, to wit: shortness of the time of notice of motion,

and that the papers were served when the board were not in session, I think, are not well taken. The practice in *mandamus* cases, if there was no other answer to the objection, is an exception; and is not controlled by the provisions of the Code. (*Code,* § 271,) The court can regulate its own practice in regard to these proceedings, always taking care to give *reasonable* notice to the parties to prepare, who are called upon to show cause. Such notice was given in this matter. There is no complaint that it was not. (*People* agt. *N. Y. Com Pleas,* 13 *Wend.,* 655 ; *note.*) Service of the notice on the chairman of the contracting board ought to be sufficient. Service on a majority of them certainly should be. In the absence of any statutory provision to the contrary, and in analogy to the practice as to service of papers, on other bodies of public officers, I shall hold the service on a majority of the board, including the chairman, to be good. It would be deplorable, indeed, if there exists among us public bodies of men who, by the mere act of adjourning their sessions, can exempt themselves or their official acts from being reviewed by the courts, until the next official session of their body, for the lack of authority to serve legal papers or process on them. (12 *Wend.,* 183.) These, however, are questions of minor consequence, compared with the real question of right in the case.

The power of *mandamus,* it is conceded, is an extraordinary power, and ought not to be put in exercise when the party is provided with any other adequate remedy. But when the right of the party is clear and undoubted, and the injured party has no other specific means of compelling the performance of the thing to be done, *mandamus* is not only the proper remedy, but is one of the most efficient proceedings known to the law for the enforcement of a right. The examination must therefore be directed to this view, the rights of the parties. The undisputed facts in this case are, that " The Contracting Board," in pursuance of the pro-

visions of the act of 1854, chapter 329, issued public notice, to contractors, that sealed proposals would be received by them at the canal commissioner's office in Albany, until the third of December, inst., for the rebuilding of Bassett lock on the Champlain canal. This notice set out all the conditions that the contractor would be bound to observe on his part. Among these conditions was this, " that the contractor would be required to receive and use in the work all such materials as have been previously procured and delivered for any of the work, and allow such prices therefor, as might be exhibited at the office prior to the letting," and also, the persons to whom the work may be awarded, will be required to enter into contract, for the performance of the work, within ten days after the same shall be awarded to them, at the place, *and upon the terms prescribed by the contracting board.*

The notice informed the contractors that the plans, maps, specifications, quantities of material, forms of contract, notices, and other necessary papers which they would require, would be ready at the engineer's office for examination, and that proposals and *bonds* could be obtained at the division engineer's office, before the letting.

The relators' proposal for this work, in the aggregate, was the lowest of any bidder, whose papers were sufficiently formal to be acted upon by the board. The board have refused to award the contract to the relator, and are about to award it to another person who proposed for the same, at a price in the aggregate exceeding $1,000, above the sum proposed by the relator. The papers read in opposition to the motion, show a preamble and resolution of the contracting board, passed since the service of the motion papers on the chairman, by which it appears that they have rejected the relators' proposals. The grounds of rejection stated therein are, in substance that the relators' proposal is, in the opinion of the board, deceptive and fraudulent, and by the appearance of said proposal, it seems evident

that it was the intention of the relator to perform that portion of the work, which according to the common course of things would be done first, and for which he had bid excessive prices; and with the profits obtained, paying the forfeiture on the bond, abandoning the 15 per cent. retained, and leaving the work half performed, secure to himself great benefit, with much loss and work not accomplished to the state. The resolution following the above grounds, which are contained in the preamble, after rejecting the proposition, is, " that he has rendered his bond insecure by the shape of his proposals," and the state thereby not having " adequate security" as required by the act, chapter 329, laws of 1854. These reasons, it is seen, are based upon anticipated apprehensions. Though these reasons so rendered officially do not quite agree with the reasons shown to have been given by individual members of the board, when not in session. I think we are bound to judge of the proceeding by their official action. It is not denied on the part of the contracting board that the form of the proposal, the affidavits, certificates, bond, penalty, sureties, justification, and all the preliminary conditions required by them in their published notice to contractors for proposals, have been fully complied with by the relator, except, that on the motion, a technical objection was raised that the condition of the bond was not strictly in compliance with the provisions of the third subdivision of section 10, of chapter 329, laws of 1854. It is perhaps a sufficient answer to this objection to say that the proposal was not rejected by them on this ground, and a reason why they should not now raise this objection (even if it had force) is, that as appears by the papers used on the motion, the bond was obtained at the engineer's office, the place directed in their notice, for obtaining the necessary and proper blanks, and the objection now raised is to the printed part of the said condition so furnished. The moving papers also furnish the additional evidence that the bond is in the same form as

that of other bonds adopted and taken by the board upon, other proposals for contracts with them. It will be seen that the contracting board do not claim or put their objection on the ground that the event has happened, which is provided for in subdivision 9 of section 10, of the act of 1854, to-wit : a combination by the bidders, which authorizes them to decline all the proposals, and advertise anew. That would be a case where they are invested with a discretion. I am of opinion that the relator has complied with the requisition of the terms demanded by the board. The question then assumes this shape. The relator has made his proposition in due conformity to the requirements of the contracting board, he has given the justified security, by responsible persons, for the due and faithful performance of the contract to be entered into, he has offered to perform the work for about $16,600. This proposition is at least $1,000 more favorable to the state than that of any other proposition received by the contracting board. The materials belonging to the state, and which are allotted to this work, amount to above $7,000, as estimated by the engineer and exhibited at the office. The value of which are to be deducted from his contract price for the work, his bond is in the penalty of $5,000, the amount fixed by the board. Fifteen per cent. upon the contract price of the work and materials; including per centage on the materials to be furnished by the state, are to be retained by them out of his pay, till the contract is complete. This per centage amounts to above $2,400.

There is no provision of law that I am aware of, nor is any custom of the state officers shown to be in existence, by which they are bound to pay to the contractor, monthly, or otherwise periodically, before the completion of his contract, any part of the contract price; but on the contrary, one of the conditions of this proposition of the relator is, that he will enter into the contract within ten days after it shall have been awarded to him, "*upon the terms pre-*

*scribed by the contracting board."* Can they not then therein prescribe the necessary terms of security? The 6th subdivision of section 10, chapter 329, may also be brought to their aid, and is as follows: "Any provision that may be directed by the canal board, not inconsistent with the provisions of law, *calculated to insure the faithful execution of any contract, shall be inserted therein."* This contracting board being an important part of the canal board, and having the other means of security above enumerated, cannot surely, seriously urge that with this and the other sources of security within their own power, "that the state have not an adequate security;" not even assuming that they possess the discretion to reject their own accepted proposition.

Assuming, as I do, that these state officers are influenced only by a stern sense of patriotic duty to the state, they have, as I think, mistaken their powers; they have mistaken their duty; they have mistaken the interests of the state; they have no cause for apprehension that the state is insecure; it will be their own fault if it be so. They have the power in their own hands to prevent such a result.

There can be no reason why the state should pay another contractor above $1,000 of its funds, for doing the same work, more than the sum proposed by the relator. They owe another duty to the state which they must not overlook, or forget, and for which the law and their equal duty will hold them responsible. They cannot, without the strongest reasons, permit the state to lose of its funds, to the amount of $1,000, upon a small contract like this; which, deducting the state materials allotted by the engineer, amounts to only about $9,000. The 7th subdivision, of section 10, of the act of 1854, plainly points out to them their duty in this regard, in the following language. "All contracts for work or materials shall be made with the person or persons who shall offer to do or provide the same, *at the lowest price, with adequate security for their perform-*

*ance."* By their own conditions—by their own furnishing of blank forms and terms—by their entertaining the proposition as a compliance with those terms—and by their action upon it, they are in moral and legal effect, estopped from putting their objection upon that ground. Though there may be peculiarities in the relators proposition, in the lack of uniformity of prices, to the estimates made by the engineer, what has that to do with the question? There is no condition against peculiarities. His contract is entire in the aggregate—his aggregate is below any other, and his securities and the state's securities are for the aggregate performance. They have no right or authority to say that the security they themselves prescribed is inadequate, or to prejudge his intentions, and pronounce them fraudulent. The precedent proposed to be established by " the contracting board," if permitted by the courts, and by construction allowed to be the law, would make a nullity of the statute, and place this body beyond the reach of having their action reviewed. Such is not, as I regard it, the spirit and intent of the statute.

The legislature doubtless had good reason to put restrictions upon the power of this contracting body. Whether or not we may look to past history, in regard to official conduct on this subject, we have a right to suppose that this statute was intended to check the system of alleged favoritism that had once been practiced in high places; but it is sufficient for the courts, that there is a statute on the subject, that expresses the legislative will, to which they, as well as all subordinate bodies, must submit. There is no dispute about the facts in the case. My conclusion is in the view I have taken of this question, and herein before expressed, that the contracting board have the absolute power by statute, as party of the one part, to make a contract within the limits of the power conferred; that their proposals or notice, to obtaining bids, is a proposition on their part of the terms by which they will be bound: that

a compliance with the terms of their proposition, and they being the lowest bidder at those terms, is a compliance by and an acceptance of the contract by the contractor, on his part, and this constitutes a legal meeting of minds, an offer and an acceptance, a legal agreement in contemplation of this statute, so far as to give mutual rights to the parties, and gives to the proposer for a contract, so in law accepted, a vested right in the agreement, not inchoate, but a complete right that is not in the power of the contracting board to defeat by a pretended exercise of discretion, a right which the courts will regard and enforce. I am not aware of any other adequate or specific legal remedy, than that of *mandamus* for the relator in such an event.

Let a peremptory *mandamus* therefore issue.