THE PEOPLE, *ex rel.* The Albany and Susquehanna Railroad Company, *vs.* PETER H. MITCHELL and others.

The act of April 25, 1864, (*Laws of* 1864, *ch.* 402,) which provides that in any case where the commissioners of any town authorized to subscribe to the stock of the Albany and Susquehanna Railroad Company shall have filed in the town and county clerks' offices affidavits of the consent of a majority of the tax payers &c. of such town preliminary to a subscription on behalf of said town to the stock of the company, such affidavits shall be valid and conclusive proof in all courts, and for all purposes, to authorize and uphold the respective subscriptions to the stock, and the issue of bonds to the amount specified in such proof; and that no clerical or other defects in any of such affidavits shall invalidate such proof, or the subscription to the stock, or the said bonds; but that the bonds shall be valid and binding on the town without reference to the form or sufficiency of the affidavits, is not invalid as interfering with the vested rights of the tax payers in violation of section 10 of the constitution of the United States, which provides that no state shall pass any *ex post facto* law, or law impairing the obligation of contracts.

No vested rights are acquired by the signing of the consent mentioned in the act, and the giving of a conditional assent, by the tax payers, will not constitute a contract that the bonds of the town shall only be issued upon the terms named, so as to prevent any further action of the legislature upon the subject.

The legislature, having the power to pass an act authorizing towns to issue bonds to aid in the construction of a railroad, it also has the power to make it the duty of the town officers to issue such bonds without requiring the consent of a portion of the tax payers.

Such a power existing originally, a condition requiring the consent to be given is merely a restraint upon the exercise of the power conferred, which can be removed; and the failure to procure the consent of the tax payers will not impair or control the power of the legislature to make the act absolute and imperative. It will have the right to modify or change the act.

The act of 1864 merely affected the remedy, without changing the contract.

It simply established a rule of evidence as to the effect of the affidavits filed. This was within the scope of the powers of the legislature, and does not affect a contract.

On a motion for a mandamus, to compel town railroad commissioners to subscribe to the capital stock of a railroad company, the defendants can not go behind the affidavits filed by the commissioners, of the consent of a majority of the tax payers to the issuing of bonds by the town, and show by affidavit that such consent was upon the condition that one million of dollars of *town* subscriptions to the stock should be taken before the commissioners were authorized to subscribe, and that this condition had not been complied with.

On such a motion it is not material whether a condition of that kind was originally inserted in the consent, or whether it has been complied with.

The People *v.* Mitchell.

The statute having made the affidavits of the giving of their consent, by the tax payers, proof of such consent, and thereby established a rule of evidence as to their effect, in order to get rid of them, and to destroy their effect, a proceeding must be specially instituted for that purpose.

They must stand as evidence, under the statute, until vacated or set aside, and can not be assailed by affidavits, upon a motion for a mandamus.

THIS is an appeal from an order of the special term, granting a peremptory mandamus against the defendants as railroad commissioners of the town of Summit, Schoharie county, New York, to compel them to subscribe to the assessment of $25,000, to the capital stock of the Albany and Susquehanna Railroad Company, and to issue bonds of the town therefor, according to the terms prescribed by law.

The moving papers show the organization of the company; that the defendants are railroad commissioners of the town of Summit; that the requisite consent of the tax payers has been given authorizing them to subscribe $25,000 when $1,000,000 of stock is taken, &c. which has been done; and that said consent had been duly filed in the proper town and county clerk's office by the commissioners; and that upon demand, the commissioners refused to subscribe for the stock and to issue the bonds.

The opposing affidavits show that the consent was upon the condition that there should first be obtained *town* subscriptions to the stock, to the amount of $1,000,000, that the original consent, signed by the tax payers, had been altered in a material part by striking out the word *town*, so as to make it read subscriptions, generally, instead of *town* subscriptions, as it is claimed it was intended. The relators claimed that the proof on file was conclusive.

The motion was granted, at special term, and the defendants appealed to the general term.

*A. J. Parker* and *L. L. Magham,* for the appellants.

*H. Smith,* for the relators.

MILLER, J.   The motion for a mandamus in the case at bar was resisted mainly upon the ground that the consent of the tax payers to the issuing of bonds was upon the condition that $1,000,000 of town subscriptions to the stock should be taken, before the commissioners were authorized to subscribe, and that this condition has not been complied with.

The fact alleged only appears from the opposing affidavits, and is not in the proof of consent filed, and can only be made available by going behind the affidavits filed by the commissioners.

I am inclined to think that this can not be done, and that it is not material on this motion whether the condition alleged was originally inserted in the consent, or whether that condition has been complied with.

The statute (*Laws of* 1864, *ch.* 402, §1, *p.* 911,) provides that where affidavits of the consent of the tax payers shall have been filed as required, "such affidavits shall be valid and conclusive proof in all courts and for all purposes, to authorize and uphold the respective subscriptions to the stock; and the issue of bonds specified in such proof, for such town respectively, and no clerical or other defect in any of such affidavits shall invalidate such proofs, or the subscription to the stock, or the said bonds."

If this law is valid and operative, then it is entirely decisive of the question under consideration.   It is objected to upon the ground that it interferes with certain vested rights of the tax payers in violation of the first subdivision of the tenth section of the constitution of the United States, which provides that "no state shall pass any *ex post facto* law, or law impairing the obligations of contracts."

I am entirely satisfied that no vested rights were acquired by the consent signed, and that the conditional consent alleged to have been given, did not constitute a contract that the bonds should only be issued upon the terms named, so as to prevent any further action of the legislature upon the subject.

The legislature has an undoubted right to determine what

Tho People *v.* Mitchell.

sums shall be raised by taxation, and the purposes to which the money shall be applied. And the authority to raise money by the exercise of the taxing power is not in conflict with the constitutional provisions protecting private property from seizure. (*Town of Guilford* v. *Supervisors of Chenango*, 3 *Kern.* 143. *The People* v. *The Mayor of Brooklyn*, 4 *Comst.* 419.) Nor is there any thing in the constitution prohibiting the exercise of the taxing power for a public purpose upon a particular district or locality, or taking away from the legislative discretion the mode in which it shall be exercised. (*Grant* v. *Courter*, 24 *Barb.* 232.) The power to impose a tax for local improvements has been repeatedly exercised in numerous cases. (*See cases already cited; also Bank of Rome* v. *The Village of Rome*, 18 *N. Y. Rep.* 38; *Benson* v. *The Mayor of Albany*, 24 *Barb.* 252; *Thomas* v. *Leland*, 24 *Wend.* 65.)

If the legislature had a right to pass the act authorizing the bonds to be issued, as is not doubted, then under the authorities cited it had the power to make it the duty of the town officers to issue the bonds without requiring the consent of a portion of the tax payers. Such a power existing originally, I think the condition requiring the consent to be given was merely a restraint upon the exercise of the power conferred, which could be removed, and the failure to procure the consent of the tax payers would not impair or control the power of the legislature to make the act absolute and imperative. They would have a right to modify or change the act. To say that the consent of the tax payers was not essential to its validity or effect, and such change or modification would interfere with no contract, nor would it affect any vested rights. The act authorized the tax payers to determine whether the bonds should be issued, and conferred upon them certain authority usually vested in the legislature, and the legislature had full power and authority to say that the bonds should be issued and be valid and effectual although the tax payers did not consent. (13 *N. Y. Rep.* 143.)

If the principles I have laid down are correct then it is quite clear that the legislature had a right to provide what should be the effect of the affidavits of the consent of the tax payers when filed as provided by the act, and such a provision did not interfere with any vested rights acquired under the act of 1856, and the amendments to the same.

It may also be observed, in this connection, that the act of 1864 did not interfere with the consent of the tax payers, or their consent filed with the clerk. It merely affected the remedy, without changing their contract. It simply established a rule of evidence as to the effect of the affidavits filed. This was within the scope of the powers of the legislature, and does not affect a contract. (*Stocking* v. *Minot*, 3 *Denio*, 274. *Neass* v. *Mercer*, 15 *Barb.* 318. *Hand* v. *Buller*, 2 *Kern.* 541.)

The observations made as to the effect of an act of the legislature altering one already made, in no way touches the question as to the right of parties who have been injured by the alteration of a written instrument affecting their rights seeking redress through a legitimate and proper channel. This is another and a different question, bearing upon the case now presented, to some extent at least, and entitled to consideration.

The act of 1864 makes the affidavits proof of the consent, and thereby establishes a rule of evidence as to their effect, without, in any way, interfering with any supposed rights of a party to pursue the proper remedy to test their validity and force. That act contains no provisions which interpose obstacles to an application to the proper authority to strike from the files an instrument which was not signed by the parties, or which has become nugatory by reason of material alterations made since it was executed ; nor does it in any way prevent an action for that purpose, or to alter or reform the instrument itself. The effect of the enactment was to declare, simply, that the affidavits filed, so long as they remained upon the record, should be final and conclu-

The People *v.* Mitchell.

sive. To get rid of them, and to destroy the effect of them, a proceeding should be especially instituted for that purpose. They must stand as evidence, under the statute, until vacated or set aside, and can not be assailed by affidavits upon this motion. They are final and conclusive, and if it was desired to avoid them and the effect arising from them, the parties interested must institute a proceeding to correct the record. (*The People* v. *Zeyst*, 23 *N. Y. Rep.* 140.)

It is said that the statute authorized only an absolute subscription, and that these affidavits show only a conditional one. I think that the condition attached to the consent of the tax payers, authorizing a subscription, does not attach as a condition to the subscription to be made. The consent merely imposed terms upon the subscription to be made, without affixing any qualification to it. It authorized the commissioners to subscribe upon the happening of a certain contingency, but the subscription itself was to be absolute and unqualified. They only had power to act when a certain amount had been subscribed by others, which was merely establishing the time when they should perform the act, without imposing any limitation upon it. This clearly would not be a conditional subscription, but an absolute one.

The discussion already had, covers all the objections urged, and as the relators have made out a case for a peremptory mandamus the order appealed from must be affirmed, with costs of appeal.

INGALLS, J. concurred.

HOGEBOOM, J. was for a modification of the order, and an alternative mandamus.

Order affirmed.

[ALBANY GENERAL TERM, September 18, 1865. *Hogeboom, Miller* and *Ingalls,* Justices.]