[No. 3,125.]

## JOHN COWELL *v.* WM. H. MARTIN, O. F. GRAVES, W. J. PATTERSON, AND JOHN BALLARD.

INJUNCTION RESTRAINING CONSTRUCTION OF WHARF.—A person who is the owner of, and in possession of a private wharf, is entitled to a perpetual injunction, restraining the construction of another wharf in front of his, which will cut his wharf off from the navigable waters of the bay, unless the persons constructing the same show a lawful right, proceeding from competent authority, to erect the proposed wharf.

PROCEEDINGS OF OFFICERS UNDER SPECIAL STATUTES.—When a statute prescribes the particular method in which a public officer, acting under a special authority, shall perform his duties, the mode is the measure of power.

BUILDING WHARVES BY HARBOR COMMISSIONERS.—The Board of State Harbor Commissioners, in letting a contract for the construction of a wharf, must pursue strictly the provisions of the statute. The advertisement for proposals must contain an accurate description of the work, the materials, and all the details.

IDEM.—Unless the statute is substantially complied with, the Commissioners acquire no jurisdiction to make a contract, and the same is void.

ENJOINING ERECTION OF WHARF IN SAN FRANCISCO.—A party attempting to erect a wharf in the navigable waters of the Bay of San Francisco, within or beyond the red line of 1851, under a contract with the Board of Harbor Commissioners, and in front of a private wharf, should be enjoined, at the suit of the owner of the private wharf, if the Commissioners, in letting the contract, have not followed substantially the provisions of the statute.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

March 24th, 1848, T. M. Leavenworth, the then Alcalde of San Francisco, granted to Jacob D. Hoppe the one hundred-vara lot described as follows:

"A lot of land containing one hundred varas square, in

the vicinity of the Town of San Francisco, and bounded by the extension of the following streets: South by Union street, west by Battery street, north by Filbert street, and east by a line parallel with Battery street, one hundred varas eastward from the same."

On the 13th of June, 1849, Hoppe conveyed the same to the plaintiff. Said grant was included in the provisions of section two of the Act passed March 26th, 1851, entitled an Act to provide for the disposition of certain property in the State of California. The plaintiff purchased the same property from the State of California, at the sale made under the provisions of "An Act to provide for the sale of the interest of the State of California in the property within the water line front of the City of San Francisco," approved May 18th, 1853, and received a deed therefor November 2d, 1854, from the Board of Land Commissioners. The deed of the State described the property as follows:

" Commencing at the southwest corner of Front and Filbert streets; thence westerly along Filbert street two hundred and seventy-five feet to Battery street; thence at right angles southerly along Battery street, two hundred and seventy-five feet to Union street; thence at right angles easterly along Union street two hundred and seventy-five feet to Front street; thence at right angles northerly along Front street, two hundred and seventy-five feet to the place of beginning; being lots 373, 374, 375, 376, 377, 378, 391, 392, 393, 394, 395, and 396, in the block bounded by Filbert, Battery, Union, and Front streets, as subdivided by the Board of California Land Commissioners. Together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, which are or may hereafter be the property of the State of California; and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, which may be due or become due to the

State of California; and also all the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in, or to the above described premises, and every part and parcel thereof, with the appurtenances as aforesaid. To have and to hold, all and singular, the above mentioned and described premises, together with the appurtenances as aforesaid, unto the said party of the second part, his heirs and assigns forever."

At the time of the commencement of this suit the plaintiff was in the possession of said premises, by his tenants, and this action was commenced in February, 1871, for the purpose of restraining a nuisance and injury to his reversionary estate.

In the year 1852, plaintiff erected on the premises a large warehouse for the storage of merchandise, and built a wharf thereon, which from time to time he enlarged and improved, of some eighty feet in width, and between two hundred and three hundred feet in length. From the year 1852 till the commencement of this suit, the plaintiff and his tenants had continuously used said wharf for docking and berthing vessels of all sizes, engaged in foreign and inter-State commerce, which came directly and without impediment up to said wharf, and were in the enjoyment of large sums of money therefrom for dockage and wharfage, and used said warehouse, in connection therewith, for the storage of merchandise. A large trade had been drawn to said wharf, and the yearly income from its receipts was in excess of five thousand dollars.

Front street has never been actually used or constructed as a street, highway, or thoroughfare, or extended northwardly beyond the southerly line of Union street. The Board of Supervisors of the city and county had not, up to the time of the commencement of this action, nor at any

time since, ordered or directed any portion of Front street as projected northerly beyond the southerly line of Union street, to be extended or constructed as a thoroughfare, street, or highway; and when vessels were berthed at plaintiff's wharf they were at the foot of Front street, and occupying what would be a portion of Front street when extended northerly to Filbert street. The value of said wharf as a means of commerce is fifteen thousand dollars; and without an open frontage on the navigable waters of the Bay of San Francisco, would be valueless. Up to the time of the alleged wrongs complained of by plaintiff, his said wharf and premises had always enjoyed an open and unobstructed water frontage on said bay.

Prior to the commencement of this action, no compensation or tender or offer of compensation for depriving plaintiff of the beneficial use of his property had been made, or in any manner secured to him by any one.

The wharf which defendants in their answer aver they were about to construct, would, if built to Battery street, completely inclose and shut out the said wharf and premises of plaintiff from all communication by means of water craft, with the navigable waters of said bay.

On the 12th day of January, 1871, John J. Marks, Jasper O'Farrell, and Washington Bartlett, the State Harbor Commissioners, entered into a contract with the defendants to construct a wharf in the navigable waters of the bay, in front of the plaintiff's wharf. It was the construction of this wharf the plaintiff sought in this action to enjoin. The defendants, in their answer, relied on their contract with the State Harbor Commissioners as a defense. The Court below granted a perpetual injunction as to so much of the wharf proposed to be erected by the defendants as was within the red or water front line of the City and County of San Francisco, established by an Act of the Legislature of the State

of California entitled "An Act to provide for the disposition of certain property of the State of California," passed March 26th, 1851.

The Court denied the injunction as to the construction of so much of said wharf as was outside of said red or water front line of 1851—that is to say, "as to so much of the same as surrounds the premises of plaintiff, commencing at the northerly line of Union street, running thence to the northerly line of Greenwich street, thence westerly at right angles along Greenwich street, to the easterly or red line of Battery street." From that portion of the judgment denying the injunction the plaintiff appealed.

The other facts are stated in the opinion.

*Hambleton & Gordon*, for Appellants.

The establishment of the permanent water front of the City of San Francisco by the Act of March 26th, 1851, was a contract between the public and the property owners, and could not be changed or destroyed, except by the assertion of the right of eminent domain, followed by legal condemnation and compensation. The deed from the State of California, whereby was merged in the plaintiff the leasehold and reversionary estate of these premises in fee simple absolute, operated by way of estoppel, to preclude the State from subsequently destroying their ordinary and beneficial use without compensation. As to the State of California, the plaintiff was a riparian proprietor, and as such, has a right (though his strict legal title is bounded by the premises conveyed) to the water as appurtenant thereto.

The fencing in of the premises of plaintiff by the contemplated pier, is such a taking of private property, without just compensation, as is prohibited by our Constitution; and the damage to arise from such a barrier is not consequential

or casual to the property, but a necessary and direct confiscation of the same, and cannot be justified by the maxim of *damnum absque injuria.* The power to obstruct navigation or travel must be clearly given, and when not given or transcended, the obstruction will be a nuisance. (*Attorney General* v. *Stevens*, Saxton N. J. 369; *Newark Plank Road Co.* v. *Elmer*, 1 Stockton Ch. N. J. 754; *Attorney General* v. *Hudson River R. R. Co.*, 1 Stockton Ch. N. J. 527; *Fletcher* v. *The Auburn R. R. Co.*, 25 Wend. 463; *Hughes* v. *Providence R. Co.*, 2 Rhode Island, 493.)

The Court below having found so much of the projected pier as fell within the water front line illegal, and the contract therefor, *ultra vires*, should have restrained the whole proceeding, both by interlocutory order and final decree. The Court held a portion of this wharf, and the contract therefor, illegal, for the manifest reason that the Board had no power, within the water front line of 1851, for such purpose. But its relief should not have been stayed here. The resolutions of the Board and the advertisement look to but one entire contract, and the contract itself is indivisible and entire. Upon defendants' part, they were to build a pier of specified dimensions, and not otherwise. Upon the other part, the Board were to pay one single sum for the whole work. There was no such thing legally possible as an apportionment, either of the work or the relative price therefor. The whole contract must stand or fall together. (*El Dorado County* v. *Davidson*, 30 Cal. 523.)

*Baron* v. *Mayor of Baltimore*, 2 American Jurist, 203, is very similar in character to the litigation in hand, and the defense, so far as pleading State authorization, was identical. The owner of a wharf, in the Harbor of Baltimore, sued the city authorities, acting under their charter, for shoaling the water around his wharf, by reason of introducing into the bay a large amount of drainage from their public works. The Court held that his easement in the navigable waters

adjacent, was property of which he could not be deprived, without just compensation; that he was entitled of right to the benefits flowing from contiguity or adjacency to navigable waters—to pass and repass with vessels, and receive compensation for dockage, etc. (*Brainbridge* v. *Sherlock,* 29 Ind. 372; *Ryan* v. *Brown,* 18 Mich. 196; *City of Chicago* v. *Laffin,* 49 Ill. 172; *Frink* v. *Lawrence,* 20 Conn. 121; *Murray* v. *Sharp,* 1 Bosworth, 556; *Crenshaw* v. *Slate River Co.* 6 Randolph, Va. 245; *Gardner* v. *Trustees, etc.,* 2 Johns. Ch. 162; *Morgan* v. *King,* 35 N. Y. 454; *Bragos R. R. Co.* v. *Ferris,* 26 Texas, 602.)

*Thomas P. Ryan,* for Respondents.

By the last section of the Act of 1851, it is provided that "nothing in this Act shall be construed as a surrender by the State of its right to regulate the construction of wharves or other improvements, so that they shall not interfere with the shipping and commercial interests of the Bay and Harbor of San Francisco." It seems to us that under that provision the city retained the right to build wharves, not only running at right angles with the city front, but parallel with it, and that to build a wharf on the outer seventy-five feet and parallel or longitudinal along the water front, would be no violation of the faith of the State.

Appellant is not a riparian owner. "A riparian proprietor is one who owns land bordering upon a watercourse." (2 Bouvier's Law Dictionary, 447.)

To maintain his pretension to riparian rights, appellant must show: First—That he is the owner of land. Second— That said land borders upon a watercourse. Third—That said watercourse is a fresh water stream. Fourth—That the description of said land contained in the grant, or deed thereof, entitles him to riparian rights. (3 Kent's Com. 411, et seq.; *Pollard* v. *Hagan,* 3 How. 212 ; *Child* v.

*Starr*, 4 Hill N. Y. 372; *Dana* v. *Jackson Street Wharf Co.*, 31 Cal. 120; *Eldridge* v. *Cowell*, 4 Cal. 80.)

Grants to land below high-water mark, being made by a trustee for the public, should be construed strictly as against the grantee. (3 Kent's Com. 432; *Storer* v. *Freeman*, 6 Mass. 438; *Cortelyou* v. *Van Brandt*, 2 Johns. 357.)

The right of a grantor to limit his grantee to certain boundaries, and to cut him off from all riparian rights, is established by numerous authorities. (3 Kent's Com. 434; *Den* v. *Wright*, Peters C. C. R. 64; *Dunlap* v. *Stetson*, 4 Mason, 349; *Child* v. *Starr*, 4 Hill N. Y. 372.)

Appellant is estopped by the description in his deeds from denying the existence of "Front street." (*Parker* v. *Smith*, 17 Mass. 411; *Hammond* v. *McLachlan*, 1 Sand. N. Y. 328.)

Acts complained of are not *damnum absque injuria*.

"Any proper exercise of the powers of Government which does not directly encroach upon the property of an individual, or disturb him in its possession or enjoyment, will not entitle him to compensation, or give him a right of action." (*Zimmerman* v. *Union Canal Co.*, 1 W & S. 346; *Shrunk* v. *Schuylkill Navigation Co.*, 14 S. & R. 71; *Monongahela Navigation* v. *Coons*, 6 W. & S. 101; *Davidson* v. *Boston & Maine R. R. Co.*, 3 Cush. 91; *Gould* v. *Hudson River R. R. Co.*, 12 Barb. 616; *Gould* v. *Hudson River R. R. Co.*, 6 N. Y., Selden, 522; *Radcliff* v. *Mayor, etc., of Brooklyn*, 4 N. Y., Comstock, 195; *Murray* v. *Menifee*, 20 Ark. 561; *Hooker* v. *New Haven and Northampton Co.*, 14 Conn. 146.)

By the Court, CROCKETT, J.:

The plaintiff, being the owner in possession of a private wharf, which would be rendered useless and valueless by the erection of the proposed wharf or landing place by the defendants, in the navigable waters of the bay, is entitled to a perpetual injunction, unless the defendants have shown a

lawful right, derived from competent authority, to proceed with the contemplated work. The only authority which they produce is a contract entered into by them with the Board of State Harbor Commissioners, whereby they were employed to construct the proposed wharf. It is incumbent on the defendants to show affirmatively, not only that the Board had competent authority to order the work to be done, but that in awarding the contract for doing it they have substantially pursued the statute. Section nine of the Act of April 24th, 1863 (Stats. 1863, p. 406), organizing the Board of State Harbor Commissioners, requires that, in inviting bids for work to be done in the erection of wharves, "the advertisement for proposals shall contain an accurate description of the work to be done, with a full description of the materials to be used, and such other details as may be necessary to a correct understanding of the entire work to be performed." In the advertisement under which this contract was let, the Commissioners did not pursue the statute in several important particulars. It did not contain an accurate description of the work to be done, nor any description of the materials to be used, nor did the contract conform to the advertisement. On the contrary, a portion of the wharf, for which proposals were invited, was to be sixty-eight feet wide, whereas in the contract this portion was to be only forty feet wide. These departures from the requirements of the statute are fatal to the contract. The Commissioners derived their authority wholly from the statute, and the mode prescribed for performing their duties in letting contracts, is the measure of their power. They acquired no jurisdiction to enter into a contract for the performance of this work until they had, substantially at least, complied with the statute in the mode of inviting proposals. The provision requiring the advertisement to contain an accurate description of the work to be done, and a full description of the materials to be used, was intended not only to promote com-

petition in bidding, but also to prevent collusion and an abuse of their authority by the Commissioners. It was intended to be not merely directory and to be disregarded by the Commissioners at their option, but is an imperative requirement, without a compliance with which they had no power or jurisdiction to let the contract, which was therefore void for want of authority to enter into it. It is well settled in this State and elsewhere, that when a statute prescribes the particular method in which a public officer, acting under a special authority, shall perform his duties, the mode is the measure of the power.

It is said, however, that this is a matter which does not concern the plaintiff, and that no person, except the parties to the contract or the State, can object to the contract on this ground. But this is a mistake. When one justifies what would otherwise be a trespass or a nuisance, under a license, permission, or power, derived from competent authority, it is incumbent on him to show affirmatively: first, that the authority was competent; second, that the license or power was duly granted. If he fails to show either, his defense fails. The defendants having failed to show any valid authority for erecting the wharf, the injunction was improperly dissolved as to any portion of the proposed work, and should have been made perpetual as to the whole.

Judgment and order dissolving the injunction reversed and cause remanded, with an order to the Court below to modify its judgment in accordance with this opinion.