Learned, J.
The notice of motion in this case was for a mandamus to compel the defendant to file the annual statement of the relator for the year 1881, and to issue a renewal certificate of authority to Sherwood Sterling, authorizing him to issue new policies, and authorizing the company to do business in this State. The oral argument of the relator’s counsel was to the same effect, that is, it was insisted not only that the annual statement should be filed, but also that the certificate of authority should be issued and the company authorized to do business. The affidavits which were used on the hearing were directed, not so much to the bare right of the relator to file a statement, but to the duty of the superintendent to issue the certificate of authority and to authorize the relator to do business.
But the printed brief handed to the court by the relator subsequently to the argument, states that the *254 mandamus is to compel the superintendent to file the statement, and “to proceed to thereafter determine the relator’s right to do business in New York.” So that by his printed brief the relator seems to abandon that part of the motion which sought to compel the issue of a certificate of authority, and the authorizing of the relator to do business ; and seems to limit his motion to the mere filing of the paper, and to the compelling the superintendent to thereafter determine the relator’s right to do business in New York.
One very important suggestion at once arises if this . position is taken by the relator. It appears by the affidavits presented by the superintendent that he has examined the statement which the relator desires to have him file, and that he considers it unsatisfactory under the statute. Irrespective of the “Safety Fund Certificate” business, he is not satisfied as to the solvency and ability of the company. The affidavits do not merely state this conclusion of the superintendent, but they give, in detail, the facts on which that conclusion is based. And it may be said, in passing, that the facts thus shown, principally from the statement of the relator itself, completely justify the conclusion of the superintendent. Thus it appears that the superintendent has already done one thing which the printed brief asks that he be compelled to do. He has, upon the statement which the relator desires to file, determined adversely the question of its right to do business in this State.
It need hardly be said that this court cannot review by mandamus a matter put in the quasi judicial discretion of the superintendent. And therefore the only question, according to this printed brief, must be as to the right simply to file the statement; that is, the right to put on the files of the office, a statement which the superintendent has had presented to him, which he now shows that he has examined, and from which *255 he has decided that the relator is not in that condition of solvency that he ought to permit it to do business here.
Now, if the relator asks that the superintendent determine its rights, the answer is that he has determined them, on a consideration of that very statement which the relator wishes to file.
If the relator asks simply that the statement be filed, the mere matter of filing is not a thing of any consequence. The superintendent is not a merely ministerial officer, as was the town clerk in People ex rel. Bush v. Collins (7 Johns. 549, 554). Nor can the mere filing of the statement be of any value to the relator, so far as I can see, except as a basis of the action of the superintendent. If there be any penalty for not filing,, that could not be incurred when the relator had offered to file a statement. If there is any wrong sustained by the refusal to file, the common law remedy is open. There is no special benefit to be obtained by a mandamus.
The relator argues that the superintendent cannot determine the relator’s rights, until after the filing of the statement {L. 1853, c. 463, § 14). It is very possible that on the mere question of the solvency and ability of the company the superintendent could not decide without an examination of the annual statement. But the superintendent has seen and examined this annual statement as his affidavits manifestly show. It was presented to him at his office, and he has determined against jthe relator on the matter of solvency and ability, and therefore the question returns, of what benefit can the mere filing be ? For the very object of that filing is to obtain the determination of the superintendent. Why ask for a mandamus when nothing can be gained by it ?
There are, however, some other matters which should be considered, and in considering them it must *256 be noticed that as the case is presented I must take, on any disputed point, the allegations of the answering affidavit as admitted (People ex rel. Lawrence v. Supervisors of Westchester, 73 N. Y. 173).
The relator was authorized to do business in this State (under another name) by chapter 279 of the Laws of 1867. Subsequently the relator engaged in the business of issuing what are called by it “ Safety Fund Certificates.” These are certificates by which the relator, in consideration of $10 paid, and of $3 per annum to be paid, agreed to deposit the $10 with a certain trustee, and agreed that, on the death of a person holding one of these certificates, an assessment should be made on all persons holding such certificates and the amount received (not exceeding $1,000) should be paid to the legal representatives of the deceased.
The certificate contains other provisions, but these are enough to indicate its nature.
In August, 1880, the superintendent called the attention of the relator to the matter, and stated that the relator had no right to issue these certificates in this State, and requested the relator to notify its agents that they were prohibited from soliciting for such certificates. To this the relator replied that it would at once notify its agents of the action of the Insurance Department. Thereupon the superintendent assumed that the relator had ceased issuing such certificates; but he learned the contrary in January, 1881. The deputy superintendent then went to the office of the relator in Hartford, January 14, 1881, and was there informed that the relator was still issuing such certificates. He then informed the secretary of the relator that if this were so', the superintendent would not renew the certificates of authority for the ensuing year. The secretary of the relator said that he believed the Insurance Department could not interfere, if they restricted their canvassing to these safety fund certifi *257 cates. The secretary of the relator asked the deputy superintendent what the department would do, if they should not file their statement 1 No definite .reply was made, and the secretary’ of the relator said they would gracefully withdraw from the State and not ask for a renewal of its license. The deputy superintendent replied that he would so inform the superintendent, and that the withdrawal would render unnecessary an examination of the books and papers which he was authorized to make.
On the return of the deputy superintendent to Albany, the superintendent issued, January 17, 188.1, a notice to the agents of the relator that their authority was revoked.
On January 20, 1881, the relator sent. a notice to one of its agents that the Insurance Department had nothing to do with this safety fund business, and directed him to go on with such business; that the revocation of license only related to 6‘ old line business.”
On May 12, 1881, chapter. 253 of the laws of that year was passed,- regulating associations which issue certificates to pay money to members, on death or disability, derived from assessment, etc. This required certain designations to be made before July 1, and provided for a certificate of authority from the superintendent of the Insurance Department.
In June, 1881, an application was made to the department with a designation of attorney, etc., of the “ New York Safety Fund Co-operative Association.” Correspondence followed, and it soon appeared that this so-called association was a department of the relator. Thereupon, on July 2,1881, the superintendent of the Insurance Department refused to give a certificate, stating, first, that the act just mentioned did not apply to insurance companies (see § 6); and second, that the relator did hot command the confidence of the *258 superintendent. To this the relator’s counsel replied, in substance that they differed with the department.
Further evidence is also given that the relator had been carrying on in Connecticut and in Massachusetts this business of issuing so-called Safety Fund Certificates, and that this business was managed under a contract with one Henry P. Duelos.
The relator claims that the action of the superintendent in January, 1881, induced it not to file its annual statement until November, 1881, at which time it made an attempt to file, the same. But the fact stands out plainly that on discovering that the superintendent objected to the issue of the certificates by the relator, it voluntarily withdrew. The position taken is made clear by the letter to one of its agents, above mentioned, in which the relator says that the Insurance Department has decided that this safety fund system “is not insurance under their law, and that being so, he, of course, has nothing to do with it.” The relator accepted the position which it assumed the Insurance Department had taken. • It took the ground that with this safety fund business the Insurance Department had nothing to do, and therefore there was no need to file any annual statement. There never could have been a delay from January, 1881, to November, 1881, to file the statement for 1880, if it had not been that the relator had decided that it needed no longer the sanction of the Insurance Department, and that it could carry on this safety fund business without any authority from that department. No claim was made until November, 1881, that it was by the advice or direction of the deputy superintendent that the relator had failed to file that statement.
The relator urges that the notice by the superintendent to its agents was sent within the sixty days after the first of January, within which it might file its statement. *259 * But this is immaterial. If the statement was not in fact filed within that time the superintendent could not properly issue renewal certificates of authority. So that the authority issued to agents of the relator in the previous year would necessarily cease {L. 1853, c. 463, § 14). The notice could do ho harm even if it be urged that it was ineffectual. It was for the relator to procure "authority for the year 1881, if it desired. And this it did not do. The privilege of doing an insurance business in this State is to be obtained by the performance of certain acts, and when obtained it is to be continued by the like performance at certain definite times. I need not inquire what would be the effect if the superintendent of the Insurance Department had prevented or forbidden the filing of a statement within the proper time. No such case is presented. The relator voluntarily and intentionally neglected to file its statement until it endeavored to do so in November, 1881.
But even if the attempted filing in November, 1881, could be a substitute for the filing which should have been done at the proper time, still I see no reason why the superintendent may not, as he has done, examine the statment to ascertain the solvency and ability of the relator. And as he was not satified of that, it was unnecessary to permit the filing of the statement.
If, on the other hand, this relator having once ceased, as it might, to do business in this State, desires again to renew its business here, then the matter rests with the superintendent to refuse admission if he thinks best (L. 1873, c. 593, § 2). Nor do I feel sure that every annual request for a renewal of authority is not an application “to be permitted to transact the business of insurance in this State,” under that section. It is *260 familiar law thát the right of a corporation of another State to do business here depends- on the permission of this State. And a renewal of authority is only a new permission. But it is unnecessary'to decide that point.
It is unnecessary also to discuss the merits of the scheme called “ Safety Fund Certificate Business,” although it is not difficult to see what the operation of it will be in the result. That is a matter, if this be treated as a new application, solely within the discretion of -the superintendent.
But inasmuch as the relator has urge.d that the refusal of the superintendent to file the statement was not owing to the want of solvency or ability of the company, but to its attempting to issue these certificates, I have examined the statement on this point of solvency and ability in respects pointed out by the superintendent. These show, as he claims, improper investments and a failure to comply with the law. Without going over all the objections, one or two may be briefly stated.
The certificate of the State treasurer of Connecticut shows, as held by him, seven mortgages credited at $75,500.on Connecticut property. Only four of these are reported in the schedule of mortgages held by the relator. Of the remaining three mortgages, the face value is $66,500 and . they are credited at $43,500. From the previous statements of the relator in the department, it is stated to appear that, in 1877, the relator claimed to hold these mortgages. In the next year they were not reported, but the property covered by them was set forth as real estate. The same in the next year. And, in the moving papers, this property appears as real estate owned by the company, cost value $70,151.38, while the State treasurer returns mortgages on these same pieces of property, as above stated. This fact, uncontradicted, is enough to condemn the *261 statement. No explanation is made in the printed brief of the relator.
Again, the affidavit of the superintendent shows that the relator has, by its statement, 772 mortgages in Kansas, amounting to over $312,000; that it reports $85,840 of mortgages in Connecticut, of which about $50,000 are on vacant land, leaving about $36,000 on “improved” land in Connecticut. The statement of' the treasurer of Connecticut shows $76,500 of mortgages on “improved” land.
Again, the relator is authorized by its charter to invest, among other securities “in any bonds or stocks of any corporation which are or may be created, under authority of the United States or of any of the States.” No corporation authorized to make such investments should be permitted to do an insurance business in this State:
The motion for a mandamus is denied, with costs.
Order accordingly.
The relator subsequently applied on affidavits, for an alternative writ, and for such modification of the order entered as above as would permit the alternative writ to be granted.
This was also denied.
The Supreme Court at General Term affirmed both orders, without further opinion. The relators appealed.
Robert Ludlow Fowler and Marcus T. Hun (Kobbe & Fowler, attorneys), for the appellants,—I. If there was on the hearing of the original motion for a peremptory mandamus, any disputed issue of a material, or principal fact, it was error to make the order absolute, denying the motion; and the court below, of its own motion, ex debito justitce, should have' directed an alternative mandamus so as to try such issue' of fact *262 (Tapping Mand. 6, 285, 303; Id. ch. iv; 3 Blackst. Comm. 111; Preface to Wyche's N. Y. Pr. [edition 1794]; Graham Jurisdic. 310, 311; Monell Pr. [2d ed.] 226; People ex rel. Bullard v. Contracting Board, 20 How. Pr. 206 ; Preliminary note to article 4, tit. 2, c. 16, Throop's Code Civ. Pro.; 2 Crary N. Y. Pr. 64; People ex rel. Mott v. Supervisors of Greene, 64 N. Y. 600 ; People ex rel. Wasson v. Schuyler, 69 Id. 242. See Tapping Mand. form of Rule, p. 305; Exp. Jennings, 6 Cow. 518; Barnet v. College of Physicians, 7 How. Pr. 293; Commercial Bank v. Canal Com’rs, 10 Wend. 26, 30, 31; People ex rel. Cagger v. Supervisors of Schuyler, 2 Abb Pr. N. S. 28, 82; People ex rel. Henry v. Nostrand, 46 N. Y. 375).
II. By proceeding to a final determination of the relator’s ultimate right oh a contested motion, without directing an alternative writ to issue, the court below virtually, and in conformity to the long established practice on like motions, must have decided that there were no principal issues of fact to be first determined, and that relator’s right in the first instance depended solely on matters of law (Tapping Mand. 303 ; People ex rel. Cagger v. Supervisors of Schuyler, 2 Abb. Pr. N. S. 78, 82; People ex rel. Taylor v. Brennan, 39 Barb. 522-539 ; People ex rel. Tenth Nat. B’k. of N. Y. v. Green, 3 Hun, 208; People ex rel. Mott v. Supervisors of Greene, 64 N. Y. 600 ; Code Civ. Pro. § 2070).
III. In proceeding to determine the relator’s right on the original motions, as a matter of law, to a peremptory writ, the court below erred in the application of a rule governing this class of motions. The court says: . . . . ‘ ‘As the case is presented I must take, on any disputed point, the allegations of the answering affidavits as admitted (People ex rel. Lawrence v. Supervisors of Westchester, 73 N. Y. 173).” This is not a correct statement of the rule; not on any disputed point, *263 but on any disputed point only which was essential to a determination of such application. It is submitted that the court below has extended a metaphorical expression of the court of . appeals beyond the true import of the language, and with consequences prejudicial to the appellant. The court of appeals in (73 N. Y. 173) the matter cited, and which was also for the peremptory writ, says: u The affidavits before us in this case differ in their statement of facts. In such case, if .the relator takes no issue on the allegations of the affidavits of the defendants, and proceeds to argument, and asks for a peremptory writ, that is equivalent to a demurrer ; it admits the truth of those allegations as statements of facts, but denies their sufficiency in law to prevent the issuing of the writ.” The legal effect of a demurrer is here chosen as an illustration of the effect of proceeding to a legal argument when an issue of fa.ct remains untried. It is another mode of expressing a rule founded on dialectics, that no discussion can take place from disputed premises, and that therefore" the court must always assume as against the argument those controverted facts which are relevant to the proposition discussed. By this metaphor or illustration, the court of appeals, it is submitted, did not mean to assert that the party moving the peremptory writ, admitted the scandalous, irrelevant or incompetent facts stated ih the defendant’s affidavits; but only those competent, relevant and pertinent facts accurately stated according to the rules governing proofs adduced by affidavits. Nor did the court mean to lay ■ down a novel rule of practice in mandamus, that thus proceeding to argument for the peremptory writ, was like a demurrer at common law to an indictment, and forever precluded a trial of the relevant issuable facts by the prescribed mode. Novel rules of practice, opposed to the course of the common law, do not arise in this way. Because the relator *264 moved the peremptory writ, it did not thereby abandon the right, by the practice indicated, to have the alternative writ awarded; nor was the relator’s right to have the facts properly weighed put in jeopardy by moving the peremptory writ, in the first instance.
IV. The court below, by the rules regulating applications to the court on affidavits of any kind, was holden, to weigh all the facts presented on both sides by the rules of law governing hearings on affidavits, and then to determine whether the defendant showed sufficient cause against the application. It was holden to disregard vague, immaterial, scandalous and irrelevant statements, in the defendant’s affidavits. People ex rel. Muir v. Throop, 12 Wend. 183; People ex rel. Martin v. Brown, 55 N. Y. 180; People ex rel. Taylor v. Brennan, 39 Barb. 522, 539 ; 3 Chitty Gen. Pr. 540 ; 2 Paine & Duer Pr. 57 ; People ex rel. Cook v. Becker, 20 N. Y. 354 ; People ex rel. Kenyon v. Sutherland, 81 N. Y. 1, and cases cited in the opinion; Franklin v. Underhill, 2 Johns. 374; Manning v. Downing, Id. 452; Town of Duanesburgh v. Jenkins, 40 Barb. 584; Powell v. Kane, 5 Paige, 265; De Weerth v. Feldner, 16 Abb. Pr. 295.
V. As to status of foreign corporation : Bank of Augusta v. Earle, 13 Pet. 519, 590 ; Paul v. Virginia, 8 Wall. 168; Ducat v. Chicago, 10 Id. 410; Insurance Co. v. Morse, 20 Id. 445, 456; N. Y. Life Ins. Co. v. Best, 23 Ohio St. 105; People ex rel. Glens Falls Ins. Co. v. The Judge, &c., 21 Mich. 577; Statham v. N. Y. Life Ins. Co., 45 Miss. 581, 599.
As to power of superintendent, and appropriateness of mandamus: People ex rel. National Life Ins. Co. v. State Com’rs. of Insurance, 25 Mich. 321 ; Cowell v. Martin, 43 Cal. 605, 614 ; James v. Howard, 4 Mich. 446 ; The Queen v. Trustees, &c., of the Northwich Sav. B’k, 9 A. & E. 729; People ex rel. Bailly v. Supervisors Greene, 12 Barb. 222; People ex rel. Bush v. Collins, *265 7 Johns. 550 ; Ex parte Lynch, 2 Hill, 45 ; Mills v. City of Brooklyn, 32, N. Y. 489, 497; Flournoy v. City of Jeffersonville, 17 Ind. 169, 174 ; Matter of Strong, 20 Pick. 497 ; Abbott v. Mathews, 26 Mich. 176 ; People ex rel. Green v. Dutchess & C. R. R. Co., 58 N. Y 152, 163 ; People ex rel. Osterhout v. Perry, 13 Barb. 206; People ex rel. Livingston v. Taylor, 1 Abb. Pr. N. S. 200 ; People ex rel. Son v. Miner, 37 Barb. 466 ; Gulick v. New, 14 Ind. 93 ; People ex rel. Francis v. Common Council of Troy, 78 N. Y. 33 ; People ex rel. Vickerman v. Contracting Board, 46 Barb. 254; People ex rel. Belden v. Contracting Board, 27 N. Y. 384 ; Entick v. Carrington, 19 How. St. Tr. 1030, 1063; People v. Medical Society, 32 N. Y. 187, 196; Stone v. Mississippi, 101 U. S. 814, 818 ; Howe v. Peckham, 6 How. Pr. 229, 232 ; Buffalo, &c. R. R. Co. v. Reynolds, 6 Id. 96 ; Mayor &c. of N. Y. v. Furze, 3 Hill, 612; Case of the Governor of Mo., 49 Mo. 216; Magee v. Doe, 22 Ala. 699; Nieto’s Heirs v. Carpenter, 7 Cal. 527; Carver v. Jackson, 4 Peters, 1, 87; Branson v. Wirth, 17 Wall. 32, 42 ; Pratt v. Short, 79 N. Y. 437 ; Barto v. Himrod, 8 Id. 483 ; People ex rel. Albany & Susq. R. R. Co. v. Mitchell, 45 Barb. 208, aff’d. in 35 N. Y. 531.
As to co-operative insurance : State ex rel. H. L. & A. Ins. Co. v. Moore, July 19, 1881; Durian v. Central Verein, &c., 7 Daly, 168 : Supreme Council of Chosen Friends v. Fairman, 10 Abb. N. C. 162; Barbaro v. Occidental Grove, 4 Mo. App. 429 ; Silver Lake Bank v. North,. 4 Johns. Ch. 3703.
YI. Should the court have any doubt as to the accuracy of the propositions advanced, it must be manifest that in a case of this magnitude, involving legal questions of a serious character, as yet undetermined in this State, it was error in the court below to deny the separate alternative mandamus sought. In grave cases an alternative mandamus ought always to issue in the first instance (Barnet v. College of Phy *266 sicians, 7 How. Pr. 293 ; People ex rel. Belden v. Contracting Board, 27 N. Y. 384). A new application was properly made on the previous affidavits (Tapping Mand. 294; People ex rel. Slavin v. Wendell, 71 N. Y. 171). If any essential or principal fact was in dispute, it was substantial error to have refused the alternative writ on this special application.
VII. It must be apparent, whether the writ in a proper case, is ever discretionary (which is now doubtful) or not, that the appellate courts review applications of this sort freely, both on the ground of error of law and of errors in the exercise of the discretion in the court below (People ex rel. Wasson v. Schuyler, 69 N. Y. 242).
The orders made below are final orders in a special proceeding, and the merits and legality of the conclusion embodied in the order should be as freely reviewable by appeal as final judgments in the ordinary course. It was error on the hearing in the first instance to refuse to award the alternative writ, as the relator moved for further and general relief, as well as for a peremptory mandamus. Even if the relator’s motion was properly denied, on the ground that the relator’s right to the relief sought was not clear by reason of issues of fact, then it was unnecessary and improper to proceed to a discussion and determination of the relator’s rights in New York, and its financial condition. Such questions should have been left for a proper trial, and the motion for the peremptory writ have been denied, solely on a formal ground of practice.
Rufus W. Peckham (Peckham & Rosendale, attorneys), for the respondent,—Cited : Paul v. Virginia, 8 Wall. 168; Doyle v. Continental Ins. Co., 94 U. S. 535; Exp. Paine, 1 Hill, 665; People ex rel. Staats v. Tremain, 17 How. Pr. 142; Brown v. Foster, *267 113 Mass. 136 ; McCarren v. McNulty, 7 Gray (73 Mass.) 139 ; Hart v. Hart, 22 Barb. 606; Tyler v. Ames, 6 Lans. 280; Spring v. Ansonia Clock Co., 24 Hun, 175.
Rapallo, J.
The reasons assigned in the opinion of the court at special term, for denying the peremptory writ of mandamus there applied for, were in our judgment quite sufficient to justify the conclusion reached.
The relator cannot now complain that the court passed upon the motion for a peremptory writ. The motion was for a peremptory writ and it does not appear that any application was made for an alternative writ, but on the contrary, that after the counsel for the respondent had read affidavits in justification of his own action and controverting the allegations of the relator, the latter • without introducing any further papers proceeded to argue and submit his motion for a peremptory writ on the papers then before the court, in the face of the rule declared in People ex rel. Lawrence v. Supervisors of Westchester, 73 N. Y. 173, that such a course is equivalent to a demurrer to the facts set up by the respondent. The order denying the motion for a peremptory writ should, consequently, be affirmed.
After the decision of that motion the relator made a further motion to modify the order thereon so as to permit an alternative writ to issue. This last motion was addressed to the discretion of the court, and its decision thereon is not reviewable here.
The appeal from the last order should be dismissed with costs of one appeal.

 As to the effect of delay to file, see American Ins. Co. v. Pettijohn, 63 Ind. 382.