## SUPREME COURT.

### The People *ex rel.* John Swinburne agt. The Albany Medical College.

*Albany Medical College — Appointment and removal of a professor — Legality of meeting of board of trustees — Mandamus.*

"The Albany Medical College" was created a corporation by and organized under chapter 26 of the Laws of 1839. The board of trustees is composed of twenty-five persons, and by section 4 of the act such trustees are authorized "to appoint the professors and such other instructors as they may deem necessary, subject to a removal by a vote of two-thirds of the members constituting said board, when found expedient and necessary." The relator was, on February 8, 1876, duly appointed a professor, which position he accepted and continued to discharge its duties until January, 1880. On January 2, 1880, a meeting of the trustees was held at which the professorship which the relator held was abolished by a vote of fifteen to four, nineteen members only being present. The only notice of the meeting was by postal card addressed to each of the trustees. By the statutes of this state (*vol. 1 of Edm. ed., page* 406; *vol. 2 of 6th ed., page* 12) it is provided: "The trustees of *every* college to which a charter shall be granted by the state shall be a corporation." Provision is then made for the meetings of trustees, and it is enacted: "Notice of the time and place of *every* such meeting shall be given in a newspaper printed

The People *ex rel.* Swinburne agt. Albany Medical College.

in the county where such *college* is situate, at least six days before the meeting ; and every trustee resident in such county shall be previously notified, in writing, of the time and place of such meeting." On *mandamus* to compel the college to reinstate the relator :

*Held, first.* That the provisions of the statute above quoted do not refer exclusively to "literary colleges," but are applicable to *every* college, and consequently the meeting of the trustees, at which the relator's professorship in the medical college was abolished, was illegal, because notice of such meeting was not published as required by statute.

*Second.* That though the act attempted to be done is called the abolition of the professorial chair, its effect being to remove the relator from office, the provision of the charter requiring a two-third vote was applicable.

*Third.* That the acceptance of the relator's services for four years as a professor cured the irregularity of the original appointment, if any there was.

*Fourth.* That *mandamus* is the proper remedy.

*Albany, Special Term, July,* 1881.

*Henry Smith* and *F. J. Swinburne,* for relator.

*Amasa J. Parker,* for respondent.

WESTBROOK, *J.* — " The Albany Medical College " was created a corporation by and organized under chapter 26 of the Laws of 1839.

The board of trustees is composed of twenty-five persons, and by the act aforesaid (*sec.* 4) such trustees are authorized " to appoint the professors and such other instructors as they may deem necessary, subject to a removal by a vote of two-thirds of the members constituting said board when found expedient and necessary."

The relator Dr. John Swinburne was on the 8th day of February, 1876, duly appointed professor of fractures, dislocations and clinical surgery in said college, which position he accepted and continued to discharge its duties until January, 1880.

On January 2, 1880, a meeting of the trustees was held at which the relator alleges only nineteen were present, and by

a vote of fifteen to four, as he also claims, the professorship which the relator held was abolished.

The respondent, however, insists that twenty-one trustees were present at such meeting and that seventeen voted in favor of the resolution abolishing the professorship.

It is conceded that the only notice of the meeting was by postal card addressed to each of the trustees, and that Dr. S. Vanderpoel, who was one of the trustees and also a professor, voted for the resolution of which the relator complains.

The principal question which this application presents is, was the meeting of the board of trustees legally called and held?

There can be no dispute but that "The Albany Medical College" (*chap.* 26 *of Laws of* 1839) is a corporation, and also, as its name imports, a college.

By the statutes of this state (*vol.* 1 *of Ed. ed., page* 406; *vol.* 2 *of 6th ed., page* 12) it is provided: "The trustees of *every* college to which a charter shall be granted by the state shall be a corporation." Provision is then made for the meeting of trustees and it is enacted: "Notice of the time and place of *every* such meeting shall be given in a newspaper printed in the county where such *college* is situated at least six days before the meeting, and every trustee resident in such county shall be previously notified in writing of the time and place of such meeting."

It is argued, however, in behalf of the respondent that the provision of the statute which has been quoted refers only to "literary colleges," and that chapter 15 of part 1 of the Revised Statutes, of which it is a part, is not made applicable to "The Albany Medical College," but (*sec.* 8 *of charter*) the eighteenth chapter is.

The eighteenth chapter of part one of the Revised Statutes is entitled "Of Incorporations" (1 *Ed. ed., page* 135) and did not contain the pages referred to by the counsel for respondent (*pages* 474, 475 *and* 476 *of vol.* 2) which are in the sixth edition. That edition was not a compilation by legislative

authority, but its compilers have grouped, for convenience of reference, under what they deemed the appropriate parts of the Revised Statutes such laws as they saw fit. Indeed, the whole of article 2 of title 11 of chapter 18 of the first part of the Revised Statutes entitled " Of the Incorporation of Academies and other Institutions of Learning " and contained in such sixth edition is simply chapter 184 of the Laws of 1853, and which had no existence when " The Albany Medical College " was incorporated, and the same is not now and never was any part of the Revised Statutes proper; and section 34, page 491 of volume 2 of the sixth edition (so called) of the Revised Statutes, which the counsel for the college supposes provides for it, is only section 8 of the charter (*chap.* 26 *of Laws of* 1839), arbitrarily inserted as part of the Revised Statutes, to which it does not belong and of which it forms no part.

As " The Albany Medical College " besides being a college was also a corporation, it was eminently proper to subject it to the provisions of the Revised Statutes entitled " Of Incorporations," as was done by section 8 of its charter, " so far as the same are applicable and have not been repealed," but that fact did not make it any the less liable to these provisions of the general law applicable to " *every* college; " and to it, therefore, because it is a college.

There is also a provision in its charter (*sec.* 6) which declares : " The college shall be subject to the visitation of the regents, and shall annually report to them." A reference to chapter 15 of the Revised Statutes, which contains the provision hereinbefore quoted (1 *Ed.'s ed.*, 406, *sec.* 33) in regard to the giving of notice of a meeting of the board of trustees of " *every* college," will show that article 1 of that chapter (1 *Ed.'s*, 402) is entitled " Of the Organization and Powers of the Board of Regents," and such board of regents is empowered (1 *Ed.'s*, 404, *sec.* 19) to confer the " degree of *doctor* of medicine," which degree, when thus bestowed, " shall authorize the person on whom it is conferred to practice physic and

surgery in this state." These facts and the further one that the general law, under which medical colleges may now be incorporated (*chap.* 184 *of Laws of* 1853, *and also incorporated in vol.* 2 *of* 6*th ed. of R. S., p.* 473, &c.) is entitled "An act relative to the incorporation of colleges and academies," conclusively show that chapter 15 of the first part of the Revised Statutes, and article 2 thereof, do not refer exclusively, as the counsel for the respondent insists, to "literary colleges," and that consequently the meeting of the trustees at which Dr. Swinburne's professorship in the Medical College was abolished was illegal, because notice of such meeting was not published, as required by the statute.

It is argued, however, that there were twenty-one trustees present at the meeting, and as seventeen voted for the resolution abolishing the professorship, the failure properly to call the meeting, and the non-attendance of the others, made no difference in the result. To this position there are two plain answers: First. It was no meeting of trustees, as such, unless properly called; and, second, if the three other trustees had been present we do not know what the result might have been. Their presence, their statements and arguments, might possibly have changed the entire conclusion.

The fact, too, that there was no legal meeting of the trustees answers the argument that, as Dr. Swinburne was not removed from his professorship, but the professorship was abolished, it could be done by less than a two-third vote. It would, however, be difficult to show the distinction claimed. The truth is Dr. Swinburne was in fact removed from office, though the trustees did not so style their action. The courts deal with things, no matter by what names they are disguised; and though the act attempted to be done is called the abolition of the professorial chair, its effect being to remove Dr. Swinburne from office, the provision of the charter requiring a two-third vote was applicable.

It is said that for the meeting of trustees at which Dr. Swinburne's professorship was created no notice had been

published. If this be claimed as a precedent, it is sufficient to quote the old adage that "two wrongs do not make one right;" if, however, it be argued that Dr. Swinburne was not, for that reason, legally appointed a professor, the answer is clear that the acceptance of the doctor's services for four years as a professor cured the irregularity of the original appointment, if any there was.

There were other points made upon the argument which I have not deemed it necessary to discuss. It may be proper; however, to say that the provision of the Revised Statutes (1*st ed., p.* 410, *sec.* 50) which declares "no professor or teacher of any incorporated *college* or academy shall be a trustee of *such college* or academy," is amended by chapter 132 of Laws of 1876 to read as follows: "No professor or tutor of *any incorporated academy* shall be a trustee of such *academy.*" There was, therefore, no valid objection to Dr. Vanderpoel as a trustee because he was also a professor.

Neither do I deem it necessary to discuss the propriety of the remedy by *mandamus.* Objections of this character never strike me with favor. If a court has jurisdiction of the subject-matter and of the parties by any of the modes known to the law, there is no reason why it should not exercise its powers to undo a wrong; but the objections to the remedy in this instance are answered fully by the cases cited by the counsel for the relator.

The *mandamus* asked for must be granted.