PEOPLE ex rel. KELSEY v. NEW YORK POSTGRADUATE MEDICAL SCHOOL AND HOSPITAL.

(Supreme Court, Appellate Division, First Department. May 6, 1898.)

1. COLLEGES—REMOVAL OF PROFESSOR.
    In a mandamus proceeding to compel the defendant, a medical college, to rescind a resolution of its board of directors which had revoked the relator's appointment as a professor in the college, it appeared that its by-laws provided that professors should hold office "during the pleasure of the board," while by another provision the chair of any professor might be declared vacant by a three-fourths vote of the board, after notice and a hearing upon charges. *Held*, that the two provisions were distinct, and that under the first it was competent for the board, in the exercise of its absolute discretion, to remove a professor without charges or hearing.

2. MANDAMUS—EVIDENCE.
    Where, upon a motion for a peremptory mandamus, the undisputed facts are, upon their face, plainly against the relator, it is not competent to go below the surface, and grant the writ upon debatable inferences drawn therefrom.

3. SAME—WHEN GRANTED.
    If a professor in a medical college, which is a private corporation, is removed, his remedy is not mandamus, but, if his relation with the college is contractual, he may sue for his salary or other emolument, while, if it is purely honorary, its continuance or discontinuance must be mutually optional.

Appeal from special term, New York county.

Application by the people of the state of New York, on the relation of Charles B. Kelsey, for a writ of mandamus against the New York Postgraduate Medical School and Hospital. From an order granting the writ, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John E. Parsons, for appellant.
Jordan J. Rollins, for respondent.

BARRETT, J. This is an appeal from an order granting to the relator a peremptory mandamus commanding the defendant to rescind a resolution of its board of directors which revoked the relator's appointment as one of its professors of surgery, and as a member of its faculty, and further commanding the defendant to restore the relator to these positions, and to all the rights, franchises, and privileges lawfully incident thereto. The relator was removed from the positions in question, by a majority vote of the board of directors, upon the 28th day of January, 1898. Prior to the latter date, charges had been preferred against him by the faculty of the college. The relator had been notified that these charges would be considered by the board on the 31st day of January, 1898.

Upon the 27th of that month the faculty passed a resolution request-ing the directors to return to them, unacted upon, their previous resolution asking an investigation of these charges. In response to this request the directors, at a meeting held upon the same day, returned to the faculty, unacted upon, the latter's resolution re-questing such investigation. The relator was present when the directors passed the resolution for the return of the charges to the faculty, and he voted upon that resolution. After this action was had, the directors passed the resolution which the court below directed the defendant to rescind. The relator again voted upon this resolution. The question is, was the latter resolution valid? The relator claims that it was invalid, for two reasons: First, be-cause, as he contends, he could be lawfully removed, under the de-fendant's by-laws, only by an affirmative vote of three-fourths of the entire board of directors, after a hearing upon preferred charges; second, because, as he also contends, the attempted amotion of the defendant was really an amotion upon the charges which had been previously preferred by the faculty. The court below sustained both of these contentions, and directed the relator's reinstatement.

The first question depends upon the construction of the by-laws. These by-laws formulated a carefully devised and symmetrical sys-tem upon the subject of appointments and removals. Nominations for professors are, in the first instance, to be made by the faculty. These nominations can only be rejected by a three-fourths affirma-tive vote of the entire board of directors. If not so rejected, the board appoints the nominated professor. The second subdivision of the twelfth article then provides that professors shall hold office during the pleasure of the board of directors. This subdivision is entitled "Appointments." We find in this second subdivision a different regulation with regard to the tenure of "instructors." The provision on that head is as follows:

"The term of office of an instructor shall expire on June —— of each year, unless reappointed by the board of directors."

Then follows a third subdivision, entitled "Removals," which reads as follows:

"The chair of any professor may be declared vacant by a three-fourths vote of the board of directors, upon at least two weeks' notice, together with a copy of the charges having been given to said professor of the time of which such action is to be taken, when said professor may have the opportunity of being heard in his own behalf."

The learned judge below held that the provision of the second subdivision, that professors should hold office during the pleasure of the board of directors, is qualified by this third subdivision, and that thus the power of the board is limited to removal under the latter subdivision; in other words, that the board could only ex-press its pleasure under the second subdivision by acting upon the charges in the manner provided in the third. We are unable to concur in this view. It creates an incongruity where none is ap-parent. By a forced construction, and apparently without reason, it deprives the language used in the second subdivision of its nat-ural import. The system contemplated by the two subdivisions is

entirely harmonious, and the subdivisions may co-exist, as they literally read, without inconvenience or injustice. The one calls for an exercise of discretion; the other, for an exercise of judgment. The decision of a board upon charges, after a hearing, cannot in any proper sense be deemed a manifestation of its pleasure. The power in the one case is absolute; in the other, judicial. It seems quite reasonable, too, that these alternative powers should thus have been conferred. It seems equally reasonable that a majority vote should have been deemed sufficient for removal at pleasure, while a three-fourths vote should have been required for a removal upon charges. When a professor is removed at pleasure, no stigma attaches to the act of removal. His services are no longer required, and he is told so. That is what, in substance, such a removal amounts to. When he is removed upon charges, however, he is sent out into the professional world with a stain upon his record. The distinction here is obvious, and the intention to discriminate just. If a professor misconducts himself, he may be disciplined. The college in that case deems it improper to give him an honorable discharge, or to permit him to depart with the impunity attached to a mere causeless dismissal. If, however, its relations with him are severed merely because he is not liked, or because some one else is preferred, dismissal "at pleasure" is provided for. In the latter case it is reasonable that the majority, in the usual way, should govern and act. In the former, it is just that the stigma should not be fastened upon the professor without a hearing, and a substantial preponderance in the vote. The intention of these alternative by-laws was indeed quite within the line of the defendant's duty, both to the public and the profession. It has a certain responsibility, present and prospective, with regard to the occupants of its chairs. The fact that a professional man is deemed worthy to fill one of them cannot but be an important factor in the public estimate of his standing. Upon the other hand, the college should not be tied to a particular person, who, however able and worthy, happens to be afflicted with temperamental qualities which render association with him disagreeable. There can be no good reason why such a person should be permanently inflicted upon his associates so long as he does nothing which renders him amenable to charges. Relations with such a man may properly be severed at pleasure. Not so, however, as to a guilty man. It would be a practical condonation of his offense to remove such a man at pleasure. He should not be permitted to escape by that easy process, and the duty is thus imposed upon the directors, in such a case, to act in the manner specified in the third subdivision. This is the true construction, as it is the plain reading, of these by-laws. Then, too, upon any other construction the professor's tenure would be practically for life, or during good behavior. This, clearly, was not the intention. The appointment of a professor is not an appointment to office in the corporation, any more than is the appointment of an instructor. It is an appointment which implies contractual relations in some form, of which the by-law is the foundation. The professor may leave at his pleasure. The board may terminate his professorship at its pleas-

ure.   If the relator's view be correct, the "pleasure" is his, and his alone.   It would follow that he has an appointment which constitutes a unilateral contract of retention, at his own pleasure, for life or during good behavior; in other words, a contract which he alone can specifically enforce, and which is entirely dependent upon his individual will.   We think this theory is entirely unfounded. The by-laws are clear and explicit, both as to the professors and the instructors.   The tenure of the instructor is one year.   He must then be reappointed.   The tenure of the professor is at the pleasure of the board.   If, however, the latter misconducts himself, then another and different provision is made, calling for the exercise of judicial judgment upon charges made, and an explanation thereof given.   We think, therefore, that the removal of the relator by a majority vote of the board was lawful.

As to the second point, the record shows that when the board acted there were no charges against the relator actually pending before it.   The learned judge below has found that these charges, though formally returned to the faculty, unacted upon, were, in substance, pending before the board when the directors removed the relator, under the second subdivision of the twelfth article of the by-laws.   It was his opinion that, although the directors thus technically removed the relator at their pleasure, they essentially removed him upon the charges.   There is not a scintilla of direct evidence to support this conclusion.   It rests entirely upon the circumstances attendant upon the action of the board; in other words, upon inferences drawn from the facts established by the direct evidence.   The direct evidence proved that the charges were, at the request of the faculty, returned to the latter body, unacted upon, and that almost immediately thereafter the directors removed the relator under the second subdivision of the twelfth article; that is, at their pleasure.   We think the inference drawn from these facts by the learned judge below was unwarranted,—at least, upon the present application.   It was not competent, upon a motion for a peremptory mandamus, to go below the surface of the facts presented, and draw debatable inferences therefrom.   Such a writ can only be granted upon questions of law; never where there is a dispute as to the material facts.   The undisputed facts here are, upon their face, plainly conclusive against the relator.   The dispute arises only upon the just inferences to be drawn from these facts.   The court went behind the direct evidence, and attached to it a force and meaning which were not apparent upon its face.   It was weighed in the light of antecedent and surrounding circumstances, and when thus weighed the inference of bad faith on the part of the directors was drawn therefrom.   The difficulty at this point is obvious.   To say the least, two inferences might have been drawn from the evidence as thus weighed.   A jury, for instance, might have inferred, as did the learned judge, that what transpired was a subterfuge to enable the directors to effect the same purpose as the removal of the relator upon the charges.   Such a jury might, however, have drawn the opposite inference from precisely the same evidence.   They might have inferred therefrom that the board acted in good faith, that it honestly believed that the faculty no longer

desired to press the charges, and that these charges were not again to be presented to them. Indeed, we think the latter the fairer inference. It certainly is more in consonance with the general principle that fraud is not to be lightly presumed, upon mere surmise or suspicion, and that it must be proved either by direct or circumstantial evidence of a convincing and satisfactory character. We have no doubt that the removal here resulted from the antagonisms engendered by these charges, and by the unpleasant criticisms which preceded them. Indeed, these antagonisms probably precipitated the final action of the board. The relator, whether right or wrong in the position which he had taken throughout, had become persona non grata with the directors, and these gentlemen thought proper to terminate their relations with him. That is the sum and substance of the whole matter. They had a right to their likes and their dislikes, and they had an equal right to express them in a lawful manner. The removal of the relator at their pleasure was within their power, under the by-law, and consequently such removal was legal and effective.

It follows that the relator was not entitled to the peremptory mandamus which was awarded him. Nor was he entitled to an alternative writ, even for the purpose of settling the question of good or bad faith, according to the inferences which a jury might draw from all the facts. Mandamus, in our judgment, was not the relator's proper remedy. The facts stated in the moving papers failed to show that he had not an adequate remedy at law. His application, so far as the remedy by mandamus is concerned, seems to be based upon the notion that the position of a professor in the defendant's college is in the nature of an office, and that it is the province of a mandamus to reinduct him into that office, and keep him there. This is an erroneous view, both of the relator's true position, and of the office of the writ. The college is a private corporation, and its professors and instructors are simply professional men appointed to serve the institution in a particular manner. They either hold contract or honorary relations with the college; but which, the papers here do not clearly disclose. If the former, the relator can sue for his salary, or for any other emolument to which he is entitled. If, however, the relation is honorary, its continuance or discontinuance must be mutually optional. A different rule applies where one is deprived of membership in a corporation. There he can be restored to membership, if improperly expelled. This was done in People v. New York Ben. Soc., 3 Hun, 361. It is also the proper remedy to compel a medical society to admit to membership one who is properly entitled thereto. People v. Erie Medical Soc., 32 N. Y. 187. The only case in this state, to which we have been referred, extending this principle to college professors in medical colleges, is People v. Albany Medical College, 62 How. Prac. 222. This case, however, was reversed upon appeal (26 Hun, 348), and the reversal was subsequently affirmed in the court of appeals (89 N. Y. 635). It is true that the reversal was upon the merits, and that nothing was said above as to the remedy. Even at special term, however, the question of the remedy was not fully considered. Judge Westbrook merely said that he did not deem it necessary to discuss the remedy by mandamus, adding a few words, to the effect that

"where a court has jurisdiction of the subject-matter and the parties, by any of the modes known to the law; there is no reason why it should not exercise its powers to undo a wrong." This doctrine would include substantially all wrongs redressable by action, and would extend mandamus indefinitely. We are unable to concur in the reasoning of that case, or in the conclusion which was there arrived at as to the remedy. We are also referred to People v. Steele, 2 Barb. 397. This, however, was not a case of a college professor. It was that of a minister of the Gospel, and it was decided upon considerations specially applicable to ministers of religious sects. We need not, therefore, express an opinion as to its authority. It was decided by a learned judge, who subsequently expressed doubt as to the propriety of mandamus to reinstate a member of a college, and a candidate for the degree of medicine. People v. College of Physicians and Surgeons, 7 How. Prac. 290. In the latter case this learned judge cited with evident approval Dr. Goddard's Case, 1 Lev. 19, where it was held that a person entitled to a fellowship in a college could not obtain restoration thereto by mandamus. We think it quite clear upon principle, and the principle is not shaken by authority, that the relator in the case at bar held no office in the college corporation, that the defendant could not be compelled by mandamus to restore him to the professorship, and that his remedy for the unlawful deprivation of any right which the professorship conferred upon him was by action.

Upon both points, therefore, the order should be reversed, and the application for a mandamus denied, with $50 costs, and disbursements of this appeal. All concur.