The People of the State of New York ex rel. Charles B. Kelsey, Respondent, v. New York Post-Graduate Medical School and Hospital, Appellant.

*Medical college — power of its directors to remove a professor — a discretionary power exists or the removal may be on charges — mandamus — a professorship is not an office.*

Charges having been preferred by the faculty of a medical college to the board of directors thereof against one of its professors, the directors subsequently, pursuant to a resolution of the faculty requesting it, returned such charges to the faculty without having acted upon them, and thereafter passed a resolution removing the professor from his position.

By subdivision 2 of the 12th article of the by-laws of the medical school, under the head of "Appointments," it was provided that professors shall hold office during the pleasure of the board of directors, and, by subdivision 3, entitled "Removals," that "the chair of any professor may be declared vacant by a three-fourths vote of the board of directors upon at least two weeks' notice, together with a copy of the charges, having been given to said professor of the time of *which such action is to be taken, when said professor may have the opportunity of being heard in his own behalf."

*Held*, that the appointment of a professor implied a contractual relation in some form, of which the by-law was the foundation;

That under subdivision 2 the board of directors was called upon to exercise a discretionary power of removal, and, under subdivision 3, to exercise their judgment upon charges preferred, the two methods being entirely distinct and independent, and that the professor might lawfully be removed by the board under subdivision 2 by a majority vote of the members thereof.

---

* *Sic.*

A peremptory mandamus can only be granted upon the decision of questions of law, and never where there is a dispute as to the material facts, or where two different opposite inferences may be drawn from the evidence offered.

*Semble,* that a professorship in a college is not an office, and that the remedy of a professor who has been removed is, if he have any, by action and not by mandamus.

APPEAL by the defendant, the New York Post-Graduate Medical School and Hospital, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of February, 1898, directing the issuance of a peremptory writ of mandamus.

*John E. Parsons,* for the appellant.

*Jordan J. Rollins,* for the respondent.

BARRETT, J.:

This is an appeal from an order granting to the relator a peremptory mandamus, commanding the defendant to rescind a resolution of its board of directors, which revoked the relator's appointment as one of its professors of surgery and as a member of its faculty, and further commanding the defendant to restore the relator to these positions, and to all the rights, franchises and privileges lawfully incident thereto.

The relator was removed from the positions in question by a majority vote of the board of directors upon the 28th day of January, 1898. Prior to the latter date charges had been preferred against him by the faculty of the college. The relator had been notified that these charges would be considered by the board on the 31st day of January, 1898. Upon the twenty-seventh of that month the faculty passed a resolution requesting the directors to return to them, unacted upon, their previous resolution asking an investigation of these charges. In response to this request the directors, at a meeting held upon the same day, returned to the faculty, unacted upon, the latter's resolution requesting such investigation. The relator was present when the directors passed the resolution for the return of the charges to the faculty and he voted upon that resolution. After this action was had the directors passed the resolution which the court below directed the defendant to rescind. The

First Department, May Term, 1898. [Vol. 29.

relator again voted upon this resolution. The question is, was the latter resolution valid?

The relator claims that it was invalid for two reasons: *First*, because — as he contends — he could be lawfully removed, under the defendant's by-laws, only by an affirmative vote of three-fourths of the entire board of directors after a hearing upon charges preferred. *Second*, because — as he also contends — the attempted amotion of the defendant was really an amotion upon the charges which had been previously preferred by the faculty.

The court below sustained both of these contentions, and directed the relator's reinstatement. The first question depends upon the construction of the by-laws. The by-laws formulated a carefully devised and symmetrical system upon the subject of appointments and removals. Nominations for professors are, in the first instance, to be made by the faculty. These nominations can only be rejected by a three-fourths affirmative vote of the entire board of directors. If not so rejected the board appoints the nominated professor. The 2d subdivision of the 12th article then provides that professors shall hold office *during the pleasure of the board of directors*. This subdivision is entitled " Appointments." We find in this 2d subdivision a different regulation with regard to the tenure of " Instructors." The provision on that head is as follows:

" The term of office of an instructor shall expire on June ——, of each year, unless reappointed by the board of directors." Then follows a 3d subdivision· entitled " Removals," which reads as follows:

" The chair of any professor may be declared vacant by a three-fourths vote of the board of directors upon at least two weeks' notice, together with a copy of the charges having been given to said professor of the time of * which such action is to be taken, when said professor may have the opportunity of being heard in his own behalf."

The learned judge below held that the provision of the 2d subdivision, that professors should hold office during the pleasure of the board of directors, was qualified by this 3d subdivision and that thus the power of the board was limited to removal under the latter subdivision. In other words, that the board could only express its

---

* *Sic.*

pleasure under the 2d subdivision by acting upon the charges in the manner provided in the 3d. We are unable to concur in this view. It creates an incongruity where none is apparent. By a forced construction, and apparently without reason, it deprives the language used in the 2d subdivision of its natural import. The system contemplated by the two subdivisions is entirely harmonious, and the subdivisions may co-exist, as they read literally, without inconvenience or injustice. The one calls for an exercise of discretion, the other for an exercise of judgment.

The decision of a board upon charges, after a hearing, cannot in any proper sense be deemed a manifestation of its pleasure. The power in the one case is absolute, in the other judicial.

It seems quite reasonable too that these alternative powers should thus have been conferred. It seems equally reasonable that a majority vote should have been deemed sufficient for removal at pleasure, while a three-fourths vote should have been required for a removal upon charges. When a professor is removed at pleasure, no stigma attaches to the act of removal. His services are no longer required and he is told so. That is what in substance such a removal amounts to. When he is removed upon charges, however, he is sent out into the professional world with a stain upon his record. The distinction here is obvious, and the intention to discriminate, just. If a professor misconducts himself, he may be disciplined. The college in that case deems it improper to give him an honorable discharge or to permit him to depart with the impunity attached to a mere causeless dismissal. If, however, its relations with him are severed merely because he is not liked or because some one else is preferred, dismissal "at pleasure" is provided for. In the latter case, it is reasonable that the majority, in the usual way, should govern and act. If the former, it is just that the stigma should not be fastened upon the professor without a hearing and a substantial preponderance in the vote. The intention of these alternative by-laws was indeed quite within the line of the defendant's duty both to the public and the profession. It has a certain responsibility, present and prospective, with regard to the occupants of its chairs. The fact that a professional man is deemed worthy to fill one of them cannot but be an important factor in the public estimate of his standing.

Upon the other hand, the college should not be tied to a particular person who, however able and worthy, happens to be afflicted with temperamental qualities which render association with him disagreeable. There can be no good reason why such a person should be permanently inflicted upon his associates, so long as he does nothing which renders him amenable to charges. Relations with such a man may properly be severed at pleasure. Not so, however, as to a guilty man. It would be a practical condonation of his offense to remove such a man at pleasure. He should not be permitted to escape by that easy process; and the duty is thus imposed upon the directors in such a case to act in the manner specified in the 3d subdivision.

This is the true construction, as it is the plain reading of these by-laws. Then, too, upon any other construction, the professor's tenure would be practically for life or during good behavior. This clearly was not the intention. The appointment of a professor is not an appointment to office in the corporation, any more than is the appointment of an instructor. It is an appointment which implies contractual relations in some form of which the by-law is the foundation. The professor may leave at his pleasure; the board may terminate his professorship at its pleasure. If the relator's view be correct, the "pleasure" is his and his alone. It would follow that he has an appointment which constitutes a unilateral contract of retention at his own pleasure for life or during good behavior; in other words, a contract which he alone can specifically enforce and which is entirely dependent upon his individual will.

We think this theory is entirely unfounded. The by-laws are clear and explicit, both as to the professors and the instructors. The tenure of the instructor is one year; he must then be reappointed. The tenure of the professor is at the pleasure of the board. If, however, the latter misconducts himself, then another and different provision is made, calling for the exercise of judicial judgment upon charges made and an explanation thereof given. We think, therefore, that the removal of the relator, by a majority vote of the board, was lawful.

As to the second point, the record shows that when the board acted, there were no charges against the relator actually pending before it. The learned judge below has found that these charges,

PEOPLE ex rel. KELSEY *v.* N. Y. MED. SCHOOL. 249

App. Div.]        First Department, May Term, 1898.

though formally returned to the faculty, unacted upon, were in substance pending before the board when the directors removed the relator under the 2d subdivision of the 12th article of the by-laws. It was his opinion that, although the directors thus technically removed the relator at their pleasure, they essentially removed him upon the charges. There is not a *scintilla* of direct evidence to support this conclusion. It rests entirely upon the circumstances attendant upon the action of the board; in other words, upon inferences drawn from the facts established by the direct evidence. The direct evidence proved that the charges were, at the request of the faculty, returned to the latter body, unacted upon, and that almost immediately thereafter the directors removed the relator under the 2d subdivision of the 12th article; that is, at their pleasure. We think the inference drawn from these facts by the learned judge below was unwarranted at least upon the present application. It was not competent upon a motion for a peremptory mandamus to go below the surface of the facts presented and draw debatable inferences therefrom. Such a writ can only be granted upon questions of law, never where there is a dispute as to the material facts. The undisputed facts here are upon their face plainly conclusive against the relator.

The dispute arises only upon the just inferences to be drawn from these facts. The court went behind the direct evidence and attached to it a force and meaning which was not apparent upon its face. It was weighed in the light of antecedent and surrounding circumstances, and when thus weighed, the inference of bad faith on the part of the directors was drawn therefrom. The difficulty at this point is obvious. To say the least, two inferences might have been drawn from the evidence as thus weighed. A jury, for instance, might have inferred, as did the learned judge, that what transpired was a subterfuge to enable the directors to effect the same purpose as the removal of the relator upon the charges. Such a jury might, however, have drawn the opposite inference from precisely the same evidence. They might have inferred therefrom that the board acted in good faith; that it honestly believed that the faculty no longer desired to press the charges; and that these charges were not again to be presented to them. Indeed, we think the latter

250  PEOPLE ex rel. KELSEY *v.* N. Y. MED. SCHOOL.

First Department, May Term, 1898.          [Vol. 29.

the fairer inference.  It certainly is more in consonance with the general principle that fraud is not to be lightly presumed upon mere surmise or suspicion ; and that it must be proved either by direct or circumstantial evidence of a convincing and satisfactory character.

We have no doubt that the removal here resulted from the antagonisms engendered by these charges and by the unpleasant criticisms which preceded them.  Indeed, these antagonisms probably precipitated the final action of the board.  The relator, whether right or wrong in the position which he had taken throughout, had become *persona non grata* with the directors, and these gentlemen thought proper to terminate their relations with him.  That is the sum and substance of the whole matter. They had a right to their likes and their dislikes ; and they had an equal right to express them in a lawful manner.  The removal of the relator at their pleasure was within their power under the by-law, and consequently such removal was legal and effective.

It follows that the relator was not entitled to the peremptory mandamus which was awarded him.  Nor was he entitled to an alternative writ even for the purpose of settling the question of good or bad faith, according to the inferences which a jury might draw from all the facts.  Mandamus, in our judgment, was not the relator's proper remedy.  The facts stated in the moving papers failed to show that he had not an adequate remedy at law.  His application, so far as the remedy by mandamus is concerned, seems to be based upon the notion that the position of a professor in the defendant's college is in the nature of an office, and that it is the province of a mandamus to reinduct him into that office and keep him there.  This is an erroneous view, both of the relator's true position and of the office of the writ.  The college is a private corporation, and its professors and instructors are simply professional men appointed to serve the institution in a particular manner.  They either hold contracts or honorary relations with the college ; but which, the papers here do not clearly disclose.  If the former, the relator can sue for his salary or for any other emolument to which he is entitled.  If, however, the relation is honorary, its continuance or discontinuance must be mutually optional.  A different rule applies where one is deprived of membership in a corporation.

PEOPLE ex rel. KELSEY v. N. Y. MED. SCHOOL. 251

App. Div.]          First Department, May Term, 1898.

There he can be restored to membership if improperly expelled. This was done in *The People* v. *Benevolent Society* (3 Hun, 361). It is also the proper remedy to compel a medical society to admit to membership one who is properly entitled thereto. (*People ex rel. Bartlett* v. *Erie Medical Society*, 32 N. Y. 187.)

The only case in this State to which we have been referred, extending this principle to college professors in medical colleges, is *The People ex rel. Swinburne* v. *Albany Medical College* (62 How. Pr. 222). This case, however, was reversed upon appeal (26 Hun, 348), and the reversal was subsequently affirmed in the Court of Appeals (89 N. Y. 635). It is true that the reversal was upon the merits, and that nothing was said above as to the remedy. Even at Special Term, however, the question of the remedy was not fully considered. Judge Westbrook merely said that he did not deem it necessary to discuss the remedy by mandamus, adding a few words to the effect that, "if a court has jurisdiction of the subject-matter and of the parties by any of the modes known to the law, there is no reason why it should not exercise its powers to undo a wrong." This doctrine would include substantially all wrongs redressable by action, and would extend mandamus indefinitely. We are unable to concur in the reasoning of that case, or in the conclusion which was there arrived at as to the remedy. We are also referred to *The People ex rel. Griffin* v. *Steele* (2 Barb. 397). This, however, was not a case of a college professor. It was that of a minister of the gospel, and it was decided upon considerations specially applicable to ministers of religious sects. We need not, therefore, express an opinion as to its authority. It was decided by a learned judge who subsequently expressed doubt as to the propriety of mandamus to reinstate a member of a college and a candidate for the degree of doctor of medicine. (*The People ex rel. Barnet* v. *College of Physicians & Surgeons*, 7 How. Pr. 290.) In the latter case, this learned judge cited with evident approval *Dr. Goddard's Case* (1 Levinz, 19), where it was held that a person entitled to a fellowship in a college could not obtain restoration thereto by mandamus.

We think it quite clear upon principle, and the principle is not shaken by authority, that the relator in the case at bar held no office in the college corporation; that the defendant could not be compelled by mandamus to restore him to the professorship, and that

his remedy for the unlawful deprivation of any right which the professorship conferred upon him was by action.

Upon both points, therefore, the order should be reversed and the application for a mandamus denied, with fifty dollars costs and disbursements of this appeal.

VAN BRUNT, P. J., RUMSEY, INGRAHAM and McLAUGHLIN, JJ., concurred.

Order reversed and application denied, with fifty dollars costs and disbursements.